UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.    21-219 (RC)** |
| | : | |
| **v.** | : | |
| | : | |
| **SOPHIA KIM,** | : | |
| also known as "Sophia Kim Sebold" and | : | |
| "Sookyeong Kim Sebold," | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Sophia Kim to 60 months' imprisonment, 5 years' supervised release, restitution in the amount of $1,502,016.21 and order forfeiture in the amount of $1,502,016.21.

Over the course of nine months in 2018, the Defendant stole over $1,500,000 from a charity. This was not one illegal transaction on one day. This was 404 separate illegal transactions, including checks, debits, and credit card charges. Simply put, the Defendant stole from a charity 404 times. The Defendant stole for purely selfish reasons—to fund a gambling addiction. Tellingly, this criminal conduct began only *nine days* after her term of supervised release expired on a prior federal charge related to embezzlement from another charity. In both instances, the Defendant abused her employment position, a position of trust, to pilfer a charity's treasury. The Defendant's crimes are serious and her inability to abide by the law when she is not supervised by the Court represents a threat to the community. Only a significant term of imprisonment will serve

as both a deterrent to the Defendant and protect the community.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Sophia KIM worked as the Treasurer and Comptroller for the Universal Ballet Foundation, which operated the Kirov Academy of Ballet ("KAB"), a 501(c)(3) organization located in the District of Columbia. The Defendant, in her personal capacity, maintained bank accounts at SunTrust Bank and BB&T Bank. KAB maintained bank accounts at SunTrust Bank and BB&T Bank, and a credit card account at BB&T Bank. As Treasurer and Controller, the Defendant had access to KAB's bank accounts, checks, debit card, and credit card.

Between January 2018 and September 2018, the Defendant misappropriated approximately $1,501,285.13 from KAB's bank accounts through unauthorized check, debit card, and credit card transactions. KAB also incurred approximately $731.08 in fees relating to these unauthorized transactions, resulting in a total loss of approximately $1,502,016.21.

Specifically, between January 9, 2018 and September 17, 2018, the Defendant wrote 68 unauthorized checks to "Cash" or to "Sophia Kim," in whole-dollar amounts ranging from $500 to $12,000, totaling approximately $377,200. These checks were signed only by the Defendant, did not have supporting documentation, and were drawn on KAB's SunTrust Bank and BB&T Bank accounts. The Defendant cashed some of these checks at the BB&T Bank located at 1909 K Street, N.W., in Washington, D.C.

In addition, between January 9, 2018 and September 21, 2018, the Defendant conducted 197 unauthorized debits and cash withdrawals, which did not have supporting documentation, totaling approximately $479,283. These unauthorized debits and cash withdrawals were drawn on KAB's SunTrust Bank and BB&T Bank accounts. These transactions incurred 161 additional related automated teller machine ("ATM") fees totaling approximately $518. The 197

unauthorized debits and cash withdrawals include 120 unauthorized debits and withdrawals at MGM National Harbor Casino in Oxon Hill, MD, totaling approximately $392,749, and 44 other unauthorized debits and withdrawals at locations in Oxon Hill, MD.  The Defendant returned approximately $27,500 to KAB through 4 ATM deposits.

Further, between January 25, 2018 and September 19, 2018, the Defendant conducted 139 unauthorized credit card transactions, which did not have supporting documentation, totaling approximately $681,751 (minus approximately $9,448 in vendor credits and cash returned to KAB).  The Defendant conducted these unauthorized credit card transactions using KAB's credit card account at BB&T Bank.  These transactions incurred 9 additional credit card fees totaling approximately $213.08.  The 139 unauthorized credit card transactions include unauthorized 120 credit card charges at MGM National Harbor Casino in Oxon Hill, MD, totaling approximately $675,277, and 6 other credit card charges with Nuskin cosmetics, totaling approximately $3,671.

On September 24, 2018, the Defendant signed a document admitting to KAB that she had stolen and misused KAB funds.  In the document, entitled, "Admission of guilt, promissory note, and Deed of Trust," the Defendant admitted the following:

> This is to confirm . . . during the term of my employment with KAB from July 2017 to the present date, I have been misusing funds of the Academy which have been entrusted to my care as Controller.  I have been abusing privileged [sic] related to the use of a debit card and made unauthorized withdrawals from KAB bank accounts (BB&T and SunTrust Bank) in the amount of approximately $800,000 to the best of my knowledge.  The amount could be higher.
>
> I have used these funds for gambling purposes and recognize that this may result in criminal charges being lodged against me for embezzlement, fraud, negligence, and employee theft.  I have all intention of reimbursing these funds to the Academy and making the Academy whole as soon as possible.

On November 8, 2018, the Defendant was interviewed by agents with the FBI.  During the interview, the Defendant admitted taking approximately $800,000 from KAB by using KAB debit and credit cards, and cash withdrawals from KAB's BB&T bank account to support her gambling.

The Defendant also admitted writing checks from KAB's BB&T bank account payable to "Cash," and signing and cashing those checks to use the money to gamble. During the interview, she further identified transactions in which she used KAB's debit card to withdraw cash at MGM National Harbor Casino in Maryland to gamble.

On November 9, 2018, the Defendant contacted the FBI and requested to meet again. During the meeting, she again admitted using KAB funds to support her gambling habit, and further stated that when she was successful at gambling, she would return those funds to KAB. The Defendant provided receipts showing 11 such deposits into KAB bank accounts.

On November 18, 2019, a criminal complaint was filed against the Defendant charging her with Bank Fraud, in violation of Title 18, United States Code, Section 1344(2). (ECF. No. 1).

On March 15, 2021, an Information was filed charging the Defendant with one count of Bank Fraud, in violation of Title 18, United States Code, Section 1344(2). (ECF. No. 44).

On May 6, 2021, the Defendant pleaded guilty to the Information. (ECF. Nos. 449 & 50).

## II.  STATUTORY PENALTIES

The Defendant now faces a single count of Bank Fraud, in violation of Title 18, United States Code, Section 1344. A violation of this statute carries a maximum sentence of 30 years' imprisonment; a fine of $1,000,000 or twice the pecuniary gain or loss of the offense; a term of supervised release of not more than five (5) years; mandatory restitution; and an obligation to pay any applicable interest or penalties on fines and restitution not made in a timely manner. In addition, a defendant is required to pay $100 per felony conviction to the Clerk of the United States District Court for the District of Columbia.

## III.  ADVISORY GUIDELINES AND FORFEITURE

The parties have stipulated in the plea agreement (ECF No. 49), that after taking into

account the Defendant's acceptance of responsibility, the Defendant's total offense level under the Guidelines is 24. PSR ¶ 47. This includes a base offense level of 7, pursuant to U.S.S.G. § 2B1.1(a)(1)(A), an additional 14 levels because the loss was more than $550,000 but less than $1,500,000, pursuant to § 2B1.1(b)(1)(H)[1], an additional 2 levels because the Defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, pursuant to § 2B1.1(b)(17)(A); an additional 2 levels because the Defendant abused a position of trust, pursuant to § 3B1.3. PSR ¶¶ 37-39, 41. The PSR writer agreed that the Defendant should receive, pursuant to U.S.S.G. §§3E1.1(a) and (b), a 3-level reduction for acceptance of responsibility. PSR ¶¶ 45, 46. The Defendant has a prior criminal conviction, so her criminal history category is II. PSR ¶ 59. The applicable advisory Guidelines range is therefore 51 to 63 months. The defense and Government agreed that a sentence within that range "would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a)." ECF No. 49 at 4.

Additionally, as part of his plea agreement, the Defendant agreed to entry of a forfeiture money judgment of $1,502,016.21. ECF No. 49 at 9-10. This represents the amount of criminal proceeds that the Defendant obtained from the crime to which she pled guilty and that the Government could prove beyond a reasonable doubt if this case were to proceed to a trial. *See* ECF No. 50 at 2 ("Between on or about January 9, 2018 and on or about September 21, 2018, [KIM] misappropriated approximately $1,501,285.13 from KAB's BB&T Bank and SunTrust Bank accounts through unauthorized check, debit card, and credit card transactions. KAB also

---

[1] Although the actual loss amount is $1,502,016.21, at the time the Government extended the plea offer the loss amount was slightly less than $1,500,000. To abide by the initial offer, and because the actual loss is barely over the $1,500,000 threshold, the parties agreed to use the lower loss amount for purposes of sentencing.

incurred approximately $731.08 in fees relating to these unauthorized transactions, resulting in a total loss of approximately $1,502,016.21."). The Government will file a consent order of forfeiture before the sentencing hearing.

IV. **A SENTENCE OF FORTY-EIGHT MONTHS' IMPRISONMENT IS CONSISTENT WITH THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a).**

The goal of sentencing is to impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). To determine such a sentence, the Court, after accurately calculating the defendant's advisory Guidelines range, must consider the factors set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). These factors include the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to promote respect for the law and adequate deterrence. 18 U.S.C. § 3553(a). Here, the § 3553(a) factors and the Defendant's cooperation support a sentence of 18 to 24 months' imprisonment.

The nature and circumstances of the Defendant's fraud support a term of imprisonment of 60 months' imprisonment. The Defendant's crime was damaging and occurred over an extended period. As stated above, over *nine months*, the Defendant engaged in approximately *404 distinct fraudulent transactions* in which she misappropriated funds from KAB, resulting in *a loss of over $1,500,000*. When individuals donate to a charity, they trust that their money will go to benefit the community. These donors also trust that the officers of the charity will use their donations wisely and not for their personal enrichment. When that trust is eroded, it risks the financial stability of the charity. Once donors no longer believe that their money is being used appropriately and that they can no longer trust the charity's leadership, donations may dry up and the community suffers. The Defendant's repeated conduct in stealing from charities is a threat to not only the organizations which employed her, but all charities. The Defendant's punishment should be

commensurate with seriousness of her crime.

The Defendant's history and characteristics also support a sentence of 60 months' imprisonment. The conduct that brings the Defendant before the Court today is not an aberration her behavior. Rather, the Defendant—for the second time—has abused her position of trust at a charity to line her own pockets. In 2012, in the Eastern District of Virginia, the Defendant was convicted of Filing a False Tax Return and Tax Evasion. In that case, the Defendant served as the Bookkeeper and Treasurer for the Korean Cultural Freedom Foundation ("KCFF"). Financial records revealed that between 2002 and 2005, the Defendant diverted $1,109,565 from KCFF to her own personal accounts and accounts that she created in the name of a shell corporation, While Life and Select Access, as well as to various brokerage accounts. As a result of her conviction, the Defendant was sentenced to 24 months' imprisonment and three years' supervised release. However, even after being under Government and Court supervision for nearly five years, nine days after her term of supervised release expired, she began a new scheme to defraud another charity. It should also be noted that the Defendant's still owes $124,865 in restitution from her prior case. In total, between the Defendant's two frauds, she stole more than $2,600,000 from charities in the last two decades.

It appears that a primary motivation for the Defendant's unlawful conduct is her serious gambling addiction. While on supervised release in this matter, the Defendant violated the terms of her release by visiting casinos, sometimes on the same day that she attended meetings of Gamblers Anonymous. As a result of the Defendant's inability to abide by her conditions of release, the Court ordered that a GPS monitor be placed on the Defendant. The Presentence Investigation Report indicates that since May 5, 2021, the Defendant has been compliant with her conditions of release and participated in Gamblers Anonymous meetings twice weekly via

telephone. However, the Government is still concerned that without a GPS monitor or the fear of incarceration the Defendant will again visit casinos and possibly engage in illegal conduct to fund that habit. The Defendant's history and personal characteristics support a 60-month term of incarceration.

Finally, a sentence of 60 months' imprisonment in this case would promote respect for the law and provide adequate general deterrence against other fraudsters abusing their positions of trust, particularly at charities. *See, e.g.*, *United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013) (noting that "an important goal of sentencing in a white-collar crime prosecution" is "the need for general deterrence."). Imposing a sentence of 60 months' imprisonment will achieve those aims, promoting respect for the law and deterring similar crimes.

## CONCLUSION

For the reasons set forth above, the Government recommends that the Court impose a sentence of 60 months' imprisonment, 5 years' supervised release, restitution in the amount of $1,502,016.21 and order forfeiture in the amount of $1,502,016.21.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar Number 415793

By:   /s/ Joshua S. Rothstein
Joshua S. Rothstein
Assistant United States Attorney
N.Y. Bar Number 4453759
555 4th Street, N.W., Room 5828
Washington, D.C. 20530
Office: 202-252-7164
Joshua.Rothstein@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing pleading was sent to defense counsel on August 30, 2021.

> */s/ Joshua S. Rothstein*
> Joshua S. Rothstein
> Assistant United States Attorney